STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-41


CLAYTON COTTON

VERSUS

FIRST FLEET


**********

APPEAL FROM THE
OFFICE OF WORKER'S COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 04-08215
HONORABLE JAMES L. BRADDOCK
WORKER'S COMPENSATION JUDGE

**********

**J. DAVID PAINTER
JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy H. Ezell, and J. David Painter, Judges.

**AFFIRMED IN PART; VACATED IN PART; AMENDED IN PART;
RENDERED IN PART; AND REMANDED.**


**George A. Flournoy
P.O. Box 1270
Alexandria, LA 71309
Counsel for Plaintiff-Appellee:
     Clayton Cotton**

**Robert A. Dunkelman
S. Michael Cooper
P.O. Box 1786
Shreveport, LA 71166
Counsel for Defendants-Appellants:
     First Fleet and Travelers Property Casualty Company of America
Painter, Judge**

Defendants, First Fleet, and its insurer, Travelers Property Casualty Company of America (Travelers), appeal the ruling of the Workers' Compensation Judge (WCJ) awarding Claimant, Clayton Cotton, temporary total disability benefits, a penalty for discontinuing benefits, and attorney's fees. For the following reasons, we affirm in part, vacate in part, amend in part, and award an additional attorney's fee on appeal.

## FACTS

Clayton Cotton worked for First Fleet as a long-haul truck driver, driving an 18-wheel tractor-trailer rig. On April 21, 2004, Mr. Cotton fell out of his truck in California. He sought medical treatment there and was treated for fractured ribs and shortness of breath. First Fleet eventually flew him home, and he sought further treatment with Dr. Robert Smith. He was treated for broken ribs and associated shoulder and back pain. After several months, neck and low back symptoms began to manifest themselves. Mr. Cotton was paid compensation benefits through August 5, 2004, when he was released to return to work. He underwent a DOT exam and returned to work on August 8, 2004. On September 13, 2004, while driving near El Paso, Texas, his face and left side began to get numb. He was concerned that he was having a stroke and was taken to a hospital in El Paso. The initial tests showed no signs of a stroke, but Mr. Cotton began complaining of neck, back, and shoulder problems. While she was massaging his neck, his wife found a lump on the back of his neck. An MRI was performed, and Dr. Shanker Sundrani performed emergency cervical surgery. Mr. Cotton has been disabled from working since that time.

First Fleet refused to pay compensation claiming that the problems arose out of a stroke rather than an on-the-job accident. Mr. Cotton filed this disputed claim for compensation. After a hearing, the WCJ rendered judgment finding Mr. Cotton's

average weekly wage to be $806.32, awarding temporary total disability benefits in the amount of $429.00 per week from September 14, 2004, and finding First Fleet responsible for "all reasonable and necessary medical treatment of plaintiff's accidental, work-related injuries to his ribs, neck and low back sustained on April 21, 2004." The WCJ further ordered First Fleet to pay a penalty of $4,000.00 for unreasonable failure to authorize medical treatment and unreasonable failure to pay medical benefits, as well as attorney's fees of $7,500.00. The court denied Mr. Cotton's claim for benefits for the period of August 5 through August 8, 2004.

Defendants appeal and Mr. Cotton has answered the appeal.

STANDARD OF REVIEW

In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La. 2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must determine not whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Lebert v. McNeese State Univ.*, 05-856, p. 4 (La.App. 3 Cir. 2/1/06), 932 So.2d 678, 683 (alteration in original).

DISCUSSION

*Causal Connection*

Defendants dispute the causal connection between Mr. Cotton's accident or accidents and the disabling injury.

> In a workers' compensation case, the claimant must establish a causal link between the work-related accident and the claimed disability. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). To aid the employee in meeting this burden:
>
>> [t]he employee's workplace accident is presumed to have caused or aggravated her disability when she proves that: (1) before the accident, she had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a casual relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident.
>
> *Tate v. Cabot Corp.*, 01-1652, p. 6 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, *writ denied*, 02-2150 (La.11/22/02), 829 So.2d 1044 (quoting *Rideaux v. Franklin Nursing Home*, 95-240, p. 5 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 755, *writ denied*, 95-3093 (La.2/16/96), 667 So.2d 1058 (citations omitted)).

*Bollich v. Family Dollar, Inc.*, 05-1459, p. 5 (La.App. 3 Cir. 6/21/06), 934 So.2d 249, 252.

Defendants assert that the injuries resulted from pre-existing back conditions and from a stroke arising out of pre-existing hypertension. This court in *Fontenot v. Wal-Mart Stores, Inc.*, 03-1570, pp. 6-7 (La.App. 3 Cir. 4/7/04), 870 So.2d 540, 545, *writ denied*, 04-1131 (La. 6/25/04), 876 So.2d 843, (quoting *Morris v. City of Opelousas*, 572 So.2d 639 (La.App. 3 Cir.1990)), discussed the effect of a pre-existing condition on the determination of whether an injury is causally connected to an on-the-job accident, as follows:

3

An otherwise compensable accident does not cease to arise out of the employment simply because it can be attributed to a physical infirmity of the employee. *Guidry v. Serigny*, 378 So.2d 938 (La.1979). It is clear that a worker's pre-existing condition does not bar his recovery under our worker's [sic] compensation statute. *Id.* Moreover, the jurisprudence is replete with statements that an employer takes the employee as he finds him. An abnormally susceptible worker is entitled to the same protection as a healthy worker. *Allor v. Belden Corp.*, 393 So.2d 1233 (La.1981).

The court further laid out a two part inquiry for determining whether an accident "arose out of" a claimant's employment:

First, it must be determined whether the employee was then engaged in his employer's business and secondly, did the necessities of the employer's business reasonably require that the employee be at the place of the accident at the time of the accident. *Kern v. Southport Mill*, 174 La. 432, 141 So. 19 (1932).

*Id.* at 544 (quoting *Guidry v. Serigny*, 378 So.2d 938 (La.1979)).

Accordingly, we will examine Mr. Cotton's accidents and ensuing injuries subject to these inquiries.

*April 21, 2004 Accident*

Defendants first assert that the WCJ erred in finding that Mr. Cotton's neck and low back problems were related to an on-the-job accident on April 21, 2004. Defendants argue that the evidence of record shows that the neck and back symptoms complained of by Mr. Cotton were the result of gradual wear and tear or degeneration from pre-existing back problems which have resulted in four previous lumbar surgeries including a fusion in his low back.

In support of this argument, Defendants point to testimony by Dr. Smith that Mr. Cotton did not complain to him of low back or neck pain and that any low back and neck pain which arose later were unrelated to the April 21 accident. However, on cross-examination, Dr. Smith admitted that he did not examine Mr. Cotton's low

4

back or neck, that the pain Mr. Cotton was experiencing between his shoulders could be related to neck injury, and that there was lumbar radiculopathy noted in an August 2004 examination. He further admitted that pain from the broken ribs sustained in the April 21 accident could have masked pain from other back injuries from manifesting itself until after the broken ribs had resolved.

The WCJ, in his reasons for judgment, particularly notes the testimony of Dr. Troy Vaughn, a neurosurgeon who treated Mr. Cotton after a 2001 accident, that it would have taken another accident of some kind to cause the problems Mr. Cotton is currently having and that a fall out of the cab of an eighteen wheeler which causes broken ribs could also cause neck and back injuries. The WCJ further notes that he believed Mr. Cotton and that Mr. Cotton had no significant neck or back problems from the time he was released after the 2001 injury until he fell out of the cab of his truck on April 21, 2004. It is important to note that while Defendants point to testimony which is in conflict with the testimony relied on by the WCJ, Defendants do not suggest that the testimony relied on by the WCJ was false or did not occur.

While the testimony was in conflict, we cannot say that the WCJ erred in his credibility evaluations, or that the record does not contain reasonable support for his conclusion that a causal connection exists between the April 21, 2004 accident and the neck and back injuries incurred by Mr. Cotton.

*September 14, 2004 Accident*

Defendants assert that there was no second accident and that, even if an accident occurred, Mr. Cotton did not show that the neck injury for which he underwent surgery was causally connected to the accident. Symptoms began to appear after the occurrence of the accidents.

5

After reviewing the record herein, we conclude that there is sufficient evidence of record to support the conclusion that a second accident occurred on September 14, 2004, when left-side weakness caused Mr. Cotton to fall back against his bunk while he was trying to get up. Mr. Cotton related this information to Dr. Sundrani in his medical history. Mr. Cotton's trial testimony also indicates that he fell back into the bunk area. The WCJ chose to believe this testimony. Although, the record contains certain inconsistencies in this regard, they are not sufficient to cast serious doubt on its occurrence.

Further, the WCJ found that either the first or second accident resulted in a disabling low back and neck injury to Mr. Cotton, that Mr. Cotton had no low back or neck symptoms for several years prior to the accidents, and that medical evidence existed to support a causal connection between the accidents and the disabling injuries. The evidence produced by Defendants did not "persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident." *Id.* After reviewing the record, we cannot say that this conclusion was unreasonable.

*Fraud*

Defendants next asserts that the WCJ erred in failing to find that Mr. Cotton willfully made misstatements with regard to his pre-existing back problems in order to obtain workers' compensation benefits, and, as a result, forfeited her right to collect benefits as set forth in La.R.S. 23:1208.

> Under the unambiguous and clear language of the statute, an employer claiming that an employee has violated La.R.S. 23:1208 must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La.9/5/95), 660 So.2d 7, 12. If the WCJ finds that all three of "these requirements are met, Section 1208 applies and its forfeiture provisions must be enforced." *Id.* at 14.

6

The determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact, and is, therefore, subject to the manifest error standard of review. *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. However, we must keep in mind that La.R.S. 23:1208(E) is penal in nature. Any statute that is penal in nature must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La.1/14/03), 836 So.2d 14; *Olander v. Schillilaegh's*, 04-725 (La.App. 3 Cir. 3/23/05), 899 So.2d 97.

La.R.S. 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Because this statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions.

Concerning the standard of appellate review of a forfeiture claim, the court in *Rowan Cos., Inc. v. Powell*, 02-1894, 02-1895, p. 6 (La.App. 1 Cir. 7/2/03), 858 So.2d 676, 680, *writ denied*, 03-2177 (La.11/14/03), 858 So.2d 425 (citations omitted), stated:

The determination of whether there is a false statement or representation willfully made for the purpose of obtaining any benefit or payment involves inherently factual determinations and, thus, this court's review of those findings by the WCJ is governed by the manifest error standard. Under that standard of review, this court may only reverse the WCJ's decision if we find (1) there is no reasonable factual basis for the finding in the record and (2) the finding is clearly wrong or manifestly erroneous.

Phillips v. Diocese of Lafayette, 869 So.2d at 316-17, (quoting in part *Flintroy v. Scott Cummins Salvage*, 36,857, p. 12 (La.App. 2 Cir. 3/10/03), 839 So.2d 1231, 1238, *writ denied*, 03-1068 (La.6/6/03), 845 So.2d 1093 (citations omitted) ).

*Jim Walter Homes, Inc. v. Guilbeau*, 05-1473, pp. 5-6 ( La.App. 3 Cir. 6/21/06) 934

So.2d 239, 243-44.

Defendants assert that Mr. Cotton committed fraud first by alleging that his neck surgery was related to his on the job accident of April 21, 2004. Having found that the WCJ correctly concluded that Mr. Cotton proved this causal connection, we find no fraud in this regard. Defendants further assert that Mr. Cotton concealed the nature and extent of his prior neck injuries during his deposition testimony. After reviewing the record, we find that the inconsistencies in Mr. Cotton's testimony do not rise to the level of fraud.

*Average Weekly Wage*

Mr. Cotton asserts that the WCJ erroneously calculated his average weekly wage without an accurate tally of the actual of number of days worked. Mr. Cotton testified that he was paid on the basis of miles driven. Therefore, La.R.S. 23:1021(12)(d) provides the appropriate method for calculation of his average weekly wage, as follow:

> (12) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as:
>
> . . . .
>
> (d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.

While Mr. Cotton's gross wage was in evidence, no evidence was adduced with regard to the number of days worked. Driving logs were introduced. However,

not all pages contain dates, making it impossible to determine days worked from this source. Therefore, the WCJ did not have before him sufficient evidence for calculation of the average weekly wage. Accordingly, the WCJ's judgment is vacated insofar as it purports to set out Mr. Cotton's average weekly wage. This matter is remanded to allow evidence to be adduced with regard to the number of days worked by Mr. Cotton during the twenty-six weeks preceding the accident, and for a recalculation of his average weekly wage as set out in La.R.S. 23:1021(12)(d).

*Medical Expenses*

Defendants further assert that the following language in the WCJ's judgment is an improper award of future medical benefits:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant is responsible for all reasonable and necessary medical treatment of plaintiff's accidental work-related injuries of her back sustained on April 20, 2004.

Defendants cite *Prevost v. Jobbers Oil Transport Co.*, 95-224,(La.App. 1 Cir. 10/6/95), 665 So.2d 400, *writ denied*, 96-440 (La. 4/8/96), 671 So.2d 336, in support of the argument that a WCJ may not make an award of future medical benefits. This court discussed that issue, as well as the holding of *Prevost*, in *Stelly v. Health South Rehabilitation*, 03-171, pp. 13-14 (La.App. 3 Cir. 7/2/03), 854 So.2d 960, 968:

> They also contend its award of "all related medical expenses during plaintiff's disability" amounts to an improper award of future medical expenses. . . . .
>
>      . . . .
>
> Under La.R.S. 23:1203(A), an employer is obligated to furnish an employee who has a compensable claim "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." As we explained in *Jacquet v. Southern Structures, Inc.*, 97-1696, p. 8 (La.App. 3 Cir. 5/20/98), 713 So.2d 723, 728 (emphasis added), "An award of compensation benefits for future medical expenses is separate

9

and distinct from an award of disability benefits. An injured employee's entitlement to benefits for medical expenses exists *even if he returns to work*, provided he needs further medical treatment for the work-related injury." Thus, the judgment incorrectly awards medical expenses "during plaintiff's disability," as the right to those benefits may extend beyond the period of disability. Although future medical expenses were awarded in *Jacquet*, the court in *Prevost v. Jobbers Oil Transport Co.*, 95-224, p. 5 (La.App. 1 Cir. 10/6/95), 665 So.2d 400, 404, *writ denied*, 96-440 (La.4/8/96), 671 So.2d 336, recognized that such an award is *unnecessary* because "the right to claim such expenses is always reserved to the plaintiff." Accordingly, we affirm the judgment insofar as it recognizes the right to receive surgery and other related medical expenses, but we amend it to delete the phrase "during plaintiff's disability" in conformity with La.R.S. 23:1203(A).

Since the judgment in this case merely recognizes the right to claim future medical expenses which is reserved to a claimant by law, we affirm the judgment of the WCJ.

Defendants further assert that the judge erred in failing to specify what is owed for past medical treatment. We agree. The judgment is vague in that it does not delineate which medical expenses are payable. "An employee establishes a claim for medical benefits by proving by a preponderance of the evidence and to a reasonable certainty, the need for such treatment following his work-related accident. *Ware v. Allen Parish Sch. Bd.*, 02-1011 (La.App. 3 Cir. 5/21/03), 854 So.2d 374." *Funderburk v. Nabors Drilling USA, Inc.*, 05-1119, p. 7 (La.App. 3 Cir. 4/26/06), 930 So.2d 1058, *writ denied*, 06-1252 (La. 9/15/06), 936 So.2d 1275. Therefore, Mr. Cotton is entitled to payment only for past medical expenses that he proved at trial were owed. After reviewing the record, we conclude that Mr. Cotton established that he is entitled to be paid for those medical services rising out of his work-related accidents and provided by Dr. Clark Gunderson, Dr. Megel Orellana, Dr. Shander Sundrani, Dr. Robert Moore, Del Sol Medical Center, Rapides General Medical Center, Central Louisiana Rehab Specialists, and Professional Pharmacy.

*Benefits for August 5 through August 8, 2004*

In her answer to the appeal, Mr. Cotton argues that the WCJ erred in failing to award benefits for August 5 through 8, 2004. Mr. Cotton asserts that, although a return to work slip was signed on August 4, 2004, he was not allowed to return to work until he had passed a CDL physical. Dr. Smith testified that he would not do this, and the physical was administered on August 9, 2004, by a chiropracter in Natchez, Mississippi. At that time, he was allowed to return to work.

Finding support for this scenario in the record, and finding nothing to suggest that Mr. Cotton would have been allowed to drive before August 9, 2004, we find that workers' compensation benefits should have been paid for this period. Therefore, we amend the judgment to require payment of benefits for that period together with legal interest from the due date.

Mr. Cotton further asks that a penalty be awarded for the non-payment of benefits for that period. We agree that a penalty is due under the provisions of La.R.S. 23:1201. Therefore, we assess Defendants with a penalty in the amount of $1,000.00 for failure to pay the benefits due for August 5 through August 8, 2004.

*Penalties and Attorney's Fees*

Defendants argue that the WCJ erred in assessing it with penalties and attorney's fes for improper discontinuance of benefits.

> [P]enalties should be imposed only when there is no good faith or just cause on the part of the employer and his refusal to pay the benefits. A workers' compensation judge's decision to award attorney fees and penalties is subject to the manifest error standard of review. Bolton [v. Mike Fleming Construction, 36,521 (La.App. 2 Cir. 12/11/02),] 833 So.2d 1177.

*Lebert*, 932 So.2d at 687.

11

Defendants assert that the refusal to pay benefits after Mr. Cotton's return to work in August 2004 was justified by the numerous discrepancies in his claim that a second accident occurred and that either accident caused the disability complained of. The trial court found that Defendants ignored the records and testimonies of Dr. Sundrani and Dr. Vaughn. He states: "this is the same employer who let the man go back to work in 2000 with what they say now are so serious neck problems that he shouldn't have been driving . . . ."

We agree with the trial court that Defendants were not in good faith and did not have just cause to refuse benefits. Accordingly, we find no error in the trial court's award of penalties and attorney's fees.

*Attorney's Fees on Appeal*

Taking into consideration the particular circumstances of this case, the lower court's award of attorney fees in the amount $7,500.00, and recent awards by this court, we find $1,500.00 to be a reasonable award for work done pursuant to this appeal. *See Williams v. A-Jax Lumber Co.*, 05-935 (La.App. 3 Cir. 5/10/06), 930 So.2d 300, *writs denied*, 06-1486 (La. 9/29/06), 937 So.2d 865; 06-1498 (La. 9/29/06) 937 So.2d 866.

CONCLUSION

Accordingly, we affirm the WCJ's determination that Mr. Cotton's injuries and disability are related to on-the-job accidents on April 21, 2004 and September 14, 2004. We further affirm the WCJ's rejection of Defendants' "fraud" defense. However, we vacate the WCJ's determination of the average weekly wage and remand for a determination of the number of days actually worked by Mr. Cotton during the twenty-six weeks prior to the April 21, 2004 accident so as to allow an

12

appropriate calculation average weekly. We affirm the WCJ's judgment insofar as it states that Defendants are responsible for all reasonable and necessary medical treatment related to injuries sustained in the April 1, 2004 accident. We render judgment ordering that Mr. Cotton be paid for those medical services rising out of his work-related accidents and provided by Dr. Clark Gunderson, Dr. Megel Orellana, Dr. Shander Sundrani, Dr. Robert Moore, Del Sol Medical Center, Rapides General Medical Center, Central Louisiana Rehab Specialists, and Professional Pharmacy We further order payment of benefits owed for August 5 through August 8, 2004 plus interest from the due date of those benefits as well as a penalty in the amount of $1,000.00. Additionally, we affirm the WCJ's award of a penalties and attorney's fees for improper discontinuance of benefits. Finally, we award an additional attorney's fee of $1,500.00 for work done on appeal.

**AFFIRMED IN PART; VACATED IN PART; AMENDED IN PART; RENDERED IN PART; AND REMANDED.**